THE UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:20CR621 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JONATHAN ROUSH, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court on multiple Motions to Suppress filed by Defendant Jonathan Roush. Docs. 54, 55, and 59. The Government timely opposed the motions. Doc. 65. Roush replied in support of his motion (Doc. 71), the Court conducted an evidentiary hearing, both parties filed supplements following the hearings. Docs. 108 and 110. Upon review of the relevant filings, testimony, exhibits, and applicable law, the Court DENIES the pending motions.

I.     **LEGAL STANDARD**

It is undisputed that Roush was state supervision at the time of the relevant events. As such, Roush was subject to the provisions of Ohio Revised Code § 2967.131 that provides:

> During the period of a conditional … parole…from confinement in a state correctional institution that is granted to an individual and that involves the placement of the individual under the supervision of the adult parole authority… authorized field officers of the authority who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant, the person of the individual or felon, the place of residence of the individual or felon, and a motor vehicle, another item of tangible or intangible personal property, or other real property in which the individual or felon has a right, title, or interest or for which the

individual or felon has the express or implied permission of a person with a right, title, or interest to use, occupy, or possess, if the field officers have reasonable grounds to believe that the individual … is not complying with the terms and conditions of the individual's or felon's conditional pardon, parole, transitional control, other form of authorized release, or post-release control. The authority shall provide each individual who is granted a conditional pardon or parole, transitional control, or another form of authorized release from confinement in a state correctional institution and each felon who is under post-release control with a written notice that informs the individual or felon that authorized field officers of the authority who are engaged within the scope of their supervisory duties or responsibilities may conduct those types of searches during the period of the conditional pardon, parole, transitional control, other form of authorized release, or post-release control if they have reasonable grounds to believe that the individual or felon has left the state, is not abiding by the law, or otherwise is not complying with the terms and conditions of the individual's or felon's conditional pardon, parole, transitional control, other form of authorized release, or post-release control.

Ohio Rev. Code Ann. § 2967.131(C) (West).

In evaluating a search of a defendant subject to the above statute, this Court's inquiry is two-fold. The Court first "examine[s] whether the relevant regulation or statute pursuant to which the search was conducted satisfies the Fourth Amendment's reasonableness requirement." *United States v. Loney*, 331 F.3d 516, 520 (6th Cir.2003) (citing *United States v. Payne*, 181 F.3d 781, 786–91 (6th Cir.1999)). The Sixth Circuit has previously held that § 2967.131(C) "passes constitutional muster." *Loney*. 331 F.3d at 521. As the Circuit explained in *Loney*, "it is now beyond question that a state statute survives Fourth Amendment scrutiny if it authorizes searches of parolees based on a reasonable suspicion that an individual is violating the terms or conditions of parole," *id*. at 520–21, and "Ohio's 'reasonable grounds' standard mirrors ... the federal reasonable suspicion standard," *id*. at 521. Indeed, the Supreme Court has upheld California's more intrusive parole regulations, which require parolees to agree to be subject to search "with

or without a search warrant and with or without cause." *Samson v. California*, 547 U.S. 843, 846 (2006).

As the statute itself is reasonable, the second question is whether "the facts of the search itself satisfy the regulation or statute at issue." *Loney*, 331 F.3d at 520. In other words, the Court must ask whether the officers had reasonable grounds—or reasonable suspicion—to suspect that Roush was violating the terms and conditions of his post release control. Reasonable suspicion "is based on the totality of the circumstances and has been defined as requiring 'articulable reasons' and 'a particularized and objective basis for suspecting the particular person.'" *Payne*, 181 F.3d at 788 (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). "Courts analyzing searches under the reasonable suspicion standard use the same factors but require a less demanding showing than when applying a probable cause standard." *Id*. at 790.

**II. ANALYSIS**

1. <u>August 16, 2019 Search of the Wadsworth Residence</u>

Roush first contends that there were numerous deficiencies surrounding the search and seizure of items from a residence in Wadsworth, Ohio. The Court will address each of Roush's arguments in turn.

While Roush does not directly argue that there was no reasonable suspicion to search the residence, he does mention in conclusory fashion that such suspicion was lacking. Out of an abundance of caution, the Court will review this argument.

On August 6, 2019, Roush was released from his then-most-recent term of custody and ordered to reside at the Lutheran Metropolitan Ministries Men's Homeless Shelter. However, Roush never reported to the shelter. Ten days later, the Ohio Adult

3

Parole Authority ("APA") received a call from Children and Family Services that claimed that Roush was residing with another sex offender in Wadsworth in a home with multiple firearms. Based upon this report, Roush was deemed a violator at large and a warrant was issued for his arrest.

Numerous APA officers, Wadsworth police, and deputy U.S. Marshals went to the home in Wadsworth in an attempt to locate Roush. APA officers interviewed the homeowner who admitted to picking Roush up from prison and that Roush had stayed at the residence for multiple nights. The homeowner consented to the search of the residence and informed officers that Roush kept several computers in a converted bedroom in the home. As a result of the search, APA officers seized three cellphones. A computer tower, two laptops, and two external hard drives.

The APA subsequently utilized the services of Ohio Internet Crimes Against Children ("ICAC") to search the electronic devices. The search revealed that one laptop and the desktop tower had a total of 31 files containing sexually explicit material.

Based upon the above, there can be no doubt that the search of the residence was proper. APA officers received information that Roush was not in his approved residence – a violation of the terms of his release. The homeowner subsequently confirmed that Roush violated the terms of his release by residing with him. Moreover, the homeowner consented to a search of the home. As such, there was more than ample reasonable suspicion to warrant searching the home.

2. Search of the Devices Seized from the Wadsworth Residence

4

Once again, Roush does not raise direct arguments that officers lacked reasonable suspicion to search the electronic devices. However, the Court will conduct such a review out of an abundance of caution.

Prior to the search of the electronic devices, APA officers were aware of Roush's criminal history. Specifically, Roush was convicted in 2008 for importuning and disseminating matter harmful to juveniles. In 2009, Roush was convicted of pandering obscenity involving a minor based upon possessing a cellphone containing nude images of a 12-year-old female. While on post release control for that conviction, Roush was indicted for unlawful sexual contact with a minor. Roush pled guilty to that indictment on March 31, 2014.

On December 16, 2016, Roush was released to APA supervision with conditions that prohibited him from: 1) accessing the internet without a third-party filter, 2) owning or possessing any equipment with photographic capabilities including cellphones, and 3) possessing any sexually explicit material. Roush was also prohibited from any contact with minors without appropriate supervision. Roush violated his conditions of release in December of 2018. A review of Roush's social media revealed pictures of him with his minor child, and a search of his car revealed a cellphone with camera capabilities. A search of the phone revealed explicit images of young females. The search of the phone also revealed that Roush had discussed having sex with three unnamed minors in a chat with his wife and had downloaded titles named "beautiful young teens," my lil girl learning," and "dad and teen daughter fucking."

Following a hearing, Roush was found to have violated the terms of his release and sentenced him to 210 days in custody. As noted above, Roush was released from this

5

term of custody and started his supervision again on August 6, 2019. Roush's new term of supervision also prohibited him from possessing a phone with camera capabilities and prohibited him from possessing any pornography or sexually explicit materials.

With the above known facts, APA officers had ample reasonable suspicion to believe that evidence that Roush was violating the terms of his supervision may be found on the electronic devices seized from the Wadsworth residence. First, even possession of certain of the items was a direct violation. However, Roush's history indicated that his use of any electronic device, time and again, was for the express purpose of storing pornography or other sexually explicit images. As such, APA officers were well within their constitutional authority to search the items.

Roush, however, contends that this authority was exceeded in several ways. First, Roush contends that O.R.C. § 2967.131(C) provides for the warrantless search of "the person of the individual or felon, the place of residence of the individual or felon, and a motor vehicle, *another item of tangible* or intangible personal property, or other real property[.]" (emphasis added). Roush contends that the use of the word "another" mandates that APA officers may search only *one* item of tangible property. The Court disagrees. Instead, read in context, the term "another" is designed to indicate a type of tangible property distinct from a motor vehicle which was separately listed by the Ohio legislature. Roush's interpretation would effectively incentivize those on supervision to store evidence of their violations on more than one device in the hope that officers choose the wrong, *single* device to search. Moreover, there is simply nothing in the text or legislative history of the statute to suggest that the General Assembly sought to *limit* the authority of APA officers. Accordingly, Roush's argument is rejected.

6

Roush further contends that the search should be invalidated because APA officers used the services of ICAC to perform the actual electronic search. Roush contends that only "authorized field officers" may search the devices per the Ohio Revised Code. Essentially, Roush seeks a ruling that restricts the APA from contracting with any entity to perform a search. Contrary to Roush's assertion, the Revised Code does not prohibit an authorized APA officer from enlisting the services of an entity that specializes in electronic searches. Accordingly, the use of ICAC does not serve to invalidate the search of the devices seized at the Wadsworth residence.

3. <u>Search of Ohio Motel Room on December 27, 2019</u>

Roush next contends that the search of his room at the Ohio Motel and the preview of the laptop that was performed in that room also violated his rights. Similar to the above, Roush raises numerous, discrete arguments challenging this search and seizure.

First, Roush contends that he was no longer subject to the reasonable suspicion standard because he had been arrested on the violator at large warrant on December 16, 2019. Roush argues that upon his arrest, his supervised release status was "temporarily revoked" and that he was therefore no longer subject to the terms and conditions imposed on those on post release control. The Court finds no merit in this argument. While Roush provides a lengthy argument regarding how his days in custody are accounted for, he has failed to provide any legal authority for his position that his release status was "temporarily revoked." This Court finds, consistent with Ohio law, that Roush's release status could only be revoked via formal hearing and a finding of violation by a court of proper jurisdiction. As no finding had been made at the time of the search, Roush

7

remained subject to the provisions of O.R.C. § 2967.131(C). *See State v. Allen*, 2007-Ohio-3930, ¶ 28 ("Contrary to [the defendant's] argument, [defendant's] arrest for a violation of his PRC did not automatically terminate his PRC status. Thus, the officers and [defendant's] parole officer were justified in conducting a warrantless search of his home pursuant to the 'conditions of supervision' form signed by [defendant].").

Roush next contends that officers lacked reasonable suspicion to search the hotel room and preview the laptop that was found in the room. At the time the hotel room was searched, officers had all of the knowledge detailed above regarding Roush's prior criminal history and that he was actively violating the terms of his release through living at an unapproved address. However, this is not the only information that officers had prior to the search. Officers also knew that Roush had used a false name to rent the hotel room in an attempt to evade detection. Moreover, the owner of the Ohio Motel had checked on the room after he learned that Roush was a convicted sex offender that was currently in custody. The owner made the determination to enter the room to turn down its heat knowing that the room was unoccupied. Upon entering, the owner viewed numerous sex toys, a laptop, and an iPad.

Armed with this information, officers had more than ample reasonable suspicion to search the hotel room. As noted above, Roush's most recent restrictions prohibited him from possessing sexually explicit materials. As such, when the Ohio Motel owner informed officers that the room contained sex toys, officers had reasonable suspicion to believe that the room contained evidence of a violation of the terms of Roush's release.

Similarly, Roush contends that the seizure of the electronic devices following a preview of the laptop revealed pornography was improper. However, the search and

subsequent seizure of the electronic items was justified for the same reasons detailed previously for the electronic devices seized at the Wadsworth residence. Not only did Roush have a cache of electronic devices after previously having been convicted numerous times for the use of such devices to victimize children, but these most recent devices were found in close proximity to sex toys *and* found in a room that Roush attempted to hide from APA officers by renting it under a false name. As such, officers were well within their discretion when they found reasonable suspicion to search the devices.

There does seem to be some suggestion by Roush that Special Agent Hasty provided false information regarding what was revealed during the preview of the laptop. However, Roush's argument is not supported by *any* evidence. Hasty's testimony was consistent throughout the suppression hearing, and the information that Hasty contends was seen during the preview was subsequently confirmed to be present following a full search after a warrant was obtained. Accordingly, there is no basis to question the veracity of Hasty's testimony.

### III.    Conclusion

Based upon the above, Roush has failed to demonstrate any legal or constitutional deficiencies in the searches and seizures that led to his indictment in this matter. Accordingly, his motions are DENIED.

IT IS SO ORDERED.

April 6, 2023             /s/ *Judge John R. Adams*
                          JUDGE JOHN R. ADAMS
                          UNITED STATES DISTRICT COURT